The Ainsley Corporation v. Commissioner.
Ainsley Corp. v. Commissioner
Docket No. 703-62.
United States Tax Court
T.C. Memo 1963-183; 1963 Tax Ct. Memo LEXIS 160; 22 T.C.M. (CCH) 889; T.C.M. (RIA) 63183; June 28, 1963
*160 Loss: Worthless stock: Sale price in excess of underlying asset value: Failure to establish worthlessness. - A claimed capital loss was disallowed in the absence of proof of worthlessness of the stock, where the sale price of the stock had exceeded the fair market value of the corporation's assets. L. W. Wrixon, 120 Montgomery St., San Francisco, Calif., for the petitioner. John R. Hargrove, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1958 in the amount of $26,093.22. The issue for decision is whether petitioner's stock in Santa Clara Frosted Foods Company became worthless in the calendar year 1958. Findings of Fact Petitioner is a corporation organized under the laws of California in 1933. Its corporate Federal income tax return for the calendar year 1958 was filed with the district director of internal revenue at San Francisco, California. From the time of its incorporation to the present time petitioner has been owned and controlled by William N. Loyd (hereinafter referred to as Lloyd). At all times material hereto, Lloyd was petitioner's *161 president. Santa Clara Frosted Foods Company (hereinafter referred to as Santa Clara) was a processor of foods and vegetables such as lima beans, broccoli, spinach, brussel sprouts, and peas. Santa Clara purchased its vegetables from growers, some of the vegetables being harvested by the growers and some by Santa Clara. Santa Clara's operation consisted of packaging and processing the products which it then turned over to a storage company to be frozen and held by the storage company for sale by Santa Clara. When necessary in order to fill out a customer's order, Santa Clara would purchase processed foods from other producers for resale to its customers. This would occur when a customer would want to buy an entire line from Santa Clara which would include items that Santa Clara did not have available in its inventory. Santa Clara was incorporated in 1940 under the laws of the State of California. Petitioner and Lloyd owned a controlling interest in Santa Clara after 1950. On December 31, 1958, Santa Clara's stock consisted of 2,300 shares, 925 being owned by petitioner and 1,375 by Lloyd. At all times material hereto, Santa Clara kept its books and filed its Federal income tax *162 returns on the basis of fiscal years ended June 30. Its operations in each year to June 30, 1955, resulted in a profit, and it paid dividends to its shareholders. A dividend of $1 per share was paid in 1955. Santa Clara encountered difficulties starting in its fiscal year ended June 30, 1956. In that year it sustained an operating loss of $16,113, and for its fiscal years ended June 30, 1957, 1958, and 1959, sustained operating losses of $231,656, $244,448, and $70,958, respectively. As of December 31, 1958, Santa Clara's liabilities exceeded its assets by $210,310.56 on a book value basis and by $206,010.67 on a fair market value basis, computed as follows: 12/31/58
12/31/58
Fair market
Explanation
Book value basis
value basis
Current assets
$ 40,911.58
$ 22,542.56
Plant property and equipment (Net of depre-
ciation reserve)
139,021.73
161,690.64
Total assets
179,933.31
184,233.20
Total liabilities
390,243.87
390,243.87
Excess of liabilities over assets
$210,310.56
$206,010.67
On May 10, 1956, petitioner loaned Santa Clara $100,000 at interest of 6 percent per annum evidenced by a promissory note due on or before June 30, 1957, the *163 payment of which was secured by deed of trust on Santa Clara's plant and equipment. On February 15, 1957, petitioner made an additional loan of $50,000 at 6 percent per annum interest to Santa Clara which loan was also secured. On October 7, 1957, petitioner agreed to advance an additional $200,000 to Santa Clara, provided that Santa Clara executed renewal notes for the first two loans, totaling $150,000, with interest at 10 percent per annum to be payable upon demand, and executed notes for $200,000 also with interest at 10 percent and payable upon demand. The total loan of $350,000 was to be secured by a mortgage, pledge and/or assignment of all of Santa Clara's assets. In accordance with this agreement Santa Clara executed renewal notes to petitioner for $150,000 and executed its promissory notes for the $200,000 advanced by petitioner as the funds were advanced. At all times after October 7, 1957, to September 1, 1959, Santa Clara's notes to petitioner were secured by a chattel mortgage and deed of trust, and as of December 31, 1958, the total amount of Santa Clara's notes to petitioner which were so secured was $350,000. The last portion of this loan was advanced by petitioner *164 to Santa Clara in May 1958. The amount of this advance was $25,000. On or about March 1958, the management of Santa Clara decided to cease normal operations. By November 1958 Santa Clara's employees had been discharged. About March 1958, the electric power for Santa Clara's plant was shut off and Santa Clara made arrangements with the storage warehouse which froze and stored its foods to use their lines for necessary electrical power. In 1958 the telephone switchboard at Santa Clara was discontinued. During 1958 Santa Clara was attempting to liquidate its inventories and was not entering into further contracts with growers of vegetables. Santa Clara sought to obtain new customers for its inventories and to sell to its regular customers. Robert Free, Santa Clara's executive vice president, attended certain conventions in 1958, one purpose of his attendance being to attempt to obtain new customers for Santa Clara's inventories. During the calendar year 1958 Santa Clara's officers made diligent efforts to sell the business. Robert Free prepared a brochure of the business which was distributed to prospective purchasers and personally contacted persons in an attempt to sell the business. *165 Free had discussions with a number of prospective purchasers. An offer of $160,000 for all of Santa Clara's assets was received from one prospect but was withdrawn before Santa Clara's officers could act on it. Santa Clara received an inquiry from a Los Angeles financial consultant who stated that he had clients "interested in acquiring a company in the frozen food field with a substantial tax loss." Free severed his employment by Santa Clara in June 1958 and at that time became employed by petitioner. After Free's resignation, Richard Hardy, who was the sales manager and a director of Santa Clara, attempted to sell the business. During November or the first part of December 1958 Hardy offered to sell all of Santa Clara's assets to Seabrook Farms. Co. (hereinafter referred to as Seabrook), Seabrook, New Jersey, for $350,000. Seabrook had this offer under consideration at December 31, 1958. By letter dated December 18, 1958, Seabrook advised Lloyd that Santa Clara's proposal to sell its assets to Seabrook had been received with great interest but that Seabrook had not had an opportunity to take the matter up at its board of directors' meeting. This letter further stated: * * * We *166 are planning to take this up at the next meeting; however prior to this we feel certain details of the transaction should be further discussed with you. Due to the holiday season and the current contract negotiations with our Unions, it appears we might not very well be in a position to do this much before the week of January 12. Sometime prior to this date we will be in touch with you to make final arrangements for a meeting at which we can discuss the matter in detail. After about March of 1958 Santa Clara's plant was not in operation and this condition existed through December 31, 1958, although throughout 1958 Santa Clara continued to make sales from its inventories and to purchase items for resale. The cost to maintain the Santa Clara plant in a closed-down condition was $1,200 per month, excluding interest on the indebtedness of $350,000 owing by Santa Clara to petitioner. On February 17, 1959, petitioner and Lloyd offered, in writing, to sell to Seabrook all the assets and outstanding shares of stock of Santa Clara. This offer was not accepted but negotiations continued, and on October 7, 1959, Santa Clara and petitioner executed a written agreement dated September 1, 1959, which *167 provided in part as follows: 1. Exchange of Assets for Stock Subject to the terms and conditions hereinafter set forth, at the time of closing referred to in paragraph 2 hereof (hereinafter called the Closing Date) (a) Seabrook will transfer and deliver to Santa Clara the assets listed in Exhibit A hereto in exchange for which (b) Santa Clara will issue and deliver to Seabrook certificates representing 20,700 fully paid and nonassessable shares of Common Stock, par value $1 per share, of Santa Clara. Said certificates shall be registered in the name of Seabrook unless prior to the Closing Date Seabrook shall have advised Santa Clara that such certificates are to be registered in the name of a nominee of Seabrook. * * *
3. Representations, Warranties and Agreements by Santa Clara and Ainsley Santa Clara and Ainsley jointly and severally represent, warrant and agree to and with Seabrook as follows: * * *
(b) The authorized capital stock of Santa Clara now consists of 5,000 shares of Common Stock, par value $100 per share, all of the same class, of which 2,300 shares are outstanding. Lloyd owns 1,375 such shares and Ainsley owns 925 such shares. On or prior to *168 the Closing Date Santa Clara's Articles of Incorporation shall have been amended to reduce the par value of its presently authorized shares of capital stock from $100 per share to $1 per share and to increase the authorized number of shares of its capital stock to not less than 23,000 shares. * * *
(e) Prior to the Closing Date Ainsley shall have contributed to the capital of Santa Clara the portion of the indebtedness of Santa Clara to Ainsley which is in excess of $255,000. On the Closing Date the remaining indebtedness of $255,000 shall be evidenced by a non-negotiable promissory note subject to set-off of Santa Clara, dated the Closing Date which note shall be in the form attached hereto as Exhibit B. (f) On the Closing Date Santa Clara shall have no liabilities other than the note payable to Ainsley, real and personal property taxes which as of July 1, 1959 were not yet due or payable and obligations payable on or after July 1, 1959 under agreements covering the rental of equipment each of which agreements is described in Exhibit D hereto. The $255,000 note which petitioner accepted was unsecured and was payable $25,000 within 30 days from the date thereof and the balance *169 in seven equal annual installments of $32,857.14 without interest. After the stock exchange provided for in the agreement Santa Clara's common stock was owned as follows: Lloyd
1,375 shares or 6 percent
Petitioner
925 shares or 4 percent
Seabrook
20,700 shares or 90 percent As part of the transaction between petitioner and Seabrook, petitioner and Lloyd granted Seabrook an oral option to purchase all of their shares of Santa Clara's stock for $25,000 of which $10,000 was to be paid to petitioner for its stock and the remaining $15,000 to Lloyd for his stock. There was no mention of this agreement in the written agreement made on September 1, 1959. On October 7, 1959, when the agreement between petitioner and Seabrook was executed the amount of unpaid principal owing by Santa Clara to petitioner evidenced by its secured promissory notes was $283,763.09, a payment of $66,236.91 having been made by Santa Clara to petitioner on June 30, 1959. As of October 7, 1959, in addition to the unpaid principal balance, there was owing to petitioner the amount of $45,954.54 of accrued interest, and interest from January 1, 1959, had not been paid to petitioner on this note. *170 In 1960 Seabrook, in accordance with the oral agreement, purchased from petitioner and Lloyd their shares of Santa Clara's stock for which Seabrook paid $10,000 to petitioner and $15,000 to Lloyd. Lloyd remained as petitioner's president until September 1, 1959. Also, the sales manager, secretary and counsel which Santa Clara had had prior to 1959 continued in their positions until September 1, 1959. Due to the seasonal pattern of petitioner's business approximately 95 percent of its employees were temporary employees who were laid off during the months of December, January and February. On January 20, 1959, the board of directors of Santa Clara held its regular meeting at which Santa Clara's receivables and payables were reported as "current to date." Santa Clara has remained in operation until the present time. The nature of its plant and equipment has remained unchanged since the acquisition of control by Seabrook. Santa Clara has continued to process frozen vegetables in this plant. Petitioner's basis in its Santa Clara stock was $102,770. Petitioner in 1958 wrote off this amount on its books and on its 1958 income tax return claimed a capital loss in the amount of *171 this $102,770 as representing a worthless security as of December 31, 1958. Respondent in his notice of deficiency increased the long-term capital gain as reported by petitioner by $102,770 with the following explanation: The deduction of $102,770.00 claimed as a loss arising from worthlessness of capital stock of Santa Clara Frosted Foods Co. is disallowed because you have failed to establish the basis of the stock and that the stock became worthless within the taxable year. The stipulated facts are found accordingly. Opinion Both parties recognize that a deduction for a loss on stock may be taken only in the year when such loss occurs. When stock is disposed of by sale or exchange at less than the taxpayer's basis therein, such a loss has occurred from such closed transaction. When stock becomes totally worthless within a taxable year, there is likewise a closed transaction and a taxpayer's entire basis in the stock is deductible. A mere decline in value, even though drastic, does not entitle a taxpayer to a deduction for worthless stock. The stock must become totally valueless. *172 However, the fact that at some later date some small amount may be received for the stock is not determinative that the stock was not worthless in the year in which worthlessness was claimed. Whether stock has become worthless is a question of fact. No one fact is determinative. The liabilities of a corporation may so far exceed the fair market value of its assets as to establish such worthlessness. . However, the fact that the liabilities of a corporation exceed its assets does not necessarily show that the corporate stock is worthless. When there is no liquidating value to the stock and no reasonable hope and expectation that a continuation of the business will result in profit for the stockholders, the stock may be said to be worthless. , affd. (C.A. 7, 1940). The determination of whether stock has become worthless in a certain year "of necessity requires a practical approach, all pertinent facts and circumstances being open to inspection *173 and consideration regardless of their objective or subjective nature." . Respondent argues that the very fact that petitioner sold its Santa Clara stock in 1960 is sufficient to establish that the stock was not worthless in 1958. Petitioner points out that in 1958 Santa Clara had closed its plant, discontinued its business, and was attempting to sell all its assets. It is petitioner's position that these events, when considered in conjunction with the lack of equity, on a liquidating value basis, for the stockholders of Santa Clara at December 31, 1958, establish that the stock was worthless at that time. In the instant case it is apparent that if the $350,000 owed by Santa Clara to petitioner is recognized as a bona fide indebtedness, there was no liquidating value for the Santa Clara stockholders at December 31, 1958. Respondent argues that since Lloyd and his family owned all but a small portion of petitioner's stock and petitioner and Lloyd were the only stockholders of Santa Clara at December 31, 1958, the indebtedness of Santa Clara to petitioner would be viewed as a contribution by petitioner to the capital of Santa *174 Clara. The stipulated balance sheet shows as of December 31, 1958, a mortgage note payable by Santa Clara to petitioner of $350,000 and there is no evidence tending to show that the amount was not a bona fide loan. We agree with petitioner that the evidence here does show that the $350,000 advanced to Santa Clara by petitioner was a loan. Cf. (C.A. 4, June 3, 1963), affirming a Memorandum Opinion of this Court. The fair market value of the assets of Santa Clara at December 31, 1958, is also stipulated. It is therefore apparent that at December 31, 1958, Santa Clara's liabilities exceeded the fair market value of its assets by $206,010.67. There is no evidence to show that petitioner had any assets as of December 31, 1958, other than the assets of a stipulated fair market value of $184,233.20. As of this date an offer by Santa Clara to sell its assets to Seabrook Farms Company for $350,000 was under consideration by Seabrook. It is apparent that petitioner's officers were attempting to dispose of the Santa Clara business for an amount in excess of the fair market value of its assets. These facts indicate that some *175 value other than liquidating value existed for Santa Clara as a going concern. Although Santa Clara's offer to Seabrook to sell its assets for $350,000 was not accepted, negotiations were continued and offers were made by Lloyd and petitioner to sell the Santa Clara stock to Seabrook. The sale, as finally consummated, involved a reorganization of Santa Clara with the issuance of the major portion of its stock to Seabrook and an option granted to Seabrook to purchase the small amount of stock retained by petitioner and Lloyd. These facts indicate that the value that existed in Santa Clara over and above the fair market value of its assets was in the acquisition of Santa Clara as a corporation. The officers of Santa Clara had not attempted to liquidate the assets of Santa Clara, other than its inventories, but had attempted to sell it as a going business either by selling all its assets or all its stock. Brochures had been prepared for this purpose. This is further indication that the officers of Santa Clara considered the corporation to have value in excess of the value of its assets. Where *176 a reasonable expectation exists that a corporate business may continue and produce a profit, the stock in such corporation has not become totally worthless. Petitioner points to a number of cases where it has been held that stock became worthless in a particular year even though in a subsequent year something was realized by the stockholders upon the disposition of the corporate assets or the stock. In each of these cases it was the prospects in the year that the stock was held to be worthless which pointed to complete worthlessness of the stock. The Supreme Court, in , pointed out that it was the fact that stock had a total lack of present value which determined its worthlessness. In that case a clearly identifiable event caused the total worthlessness to occur. The Court pointed out that a taxpayer was not required to establish that there was no possibility of an eventual recoupment as distinguished from some reasonable probability. "The taxing act does not require the taxpayer to be an incorrigible optimist." In the instant case, as of December 31, 1958, there existed a *177 going concern value to Santa Clara as a corporation in excess of the value of its assets. The evidence does not show this going concern value to be attached to anything other than the Santa Clara stock. The burden is on petitioner to establish that the stock became worthless in the taxable year. There is no evidence to show that any value of Santa Clara as a corporation which existed at the end of 1958 was attached to Santa Clara as a going business, as distinguished from a corporate entity represented by its stock. Respondent points out that petitioner had an inquiry on behalf of persons interested in acquiring a company in the frozen food field with a substantial "tax loss." Respondent does not specifically argue that Santa Clara's losses for years prior to 1958 created a potential value for its stock. He does contend that the fact that negotiations were pending at December 31, 1958, for sale of Santa Clara as a going concern or the sale of the Santa Clara stock and the fact that Santa Clara had retained its plant and other assets in a state to permit easy resumption of normal operations, indicate value to the Santa Clara stock at December 31, 1958. From a practical consideration *178 of all the facts in this case, we feel that petitioner has failed to establish that the Santa Clara stock was worthless at the end of 1958. Decision will be entered for respondent